OPINION
{¶ 1} Defendant-appellant, Scott Honaker, appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of receiving stolen property. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 16, 2007, the Stark County Grand Jury indicted appellant on one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree. At his arraignment on July 20, 2007, appellant entered a plea of not guilty to the charge.
 {¶ 3} Thereafter, on September 24, 2007, appellant filed a Motion to Suppress oral and written statements that he had made to the police, alleging that he had not knowingly, intelligently and voluntarily waived his Constitutional rights. Following a suppression hearing held on September 26, 2007, the trial court, pursuant to a Judgment Entry filed on October 1, 2007, overruled appellant's motion. A jury trial then commenced on the same day. The following testimony was adduced at trial.
 {¶ 4} On June 17, 2007, Leah Willis drove her 2000 black Dodge Dakota Sport truck to work in Navarre, Ohio, and parked it in the back of the employee parking lot next to a bike trail that runs through Massillon and Navarre. Willis, who was scheduled to work from 3:00 p.m. to 11:00 p.m. that day, testified that because she did not have anywhere to put her keys, she put them in the door well of her truck. The door was unlocked. Later the same day, Willis received a telephone call from the police telling her that her truck, which had been painted gold or bronze, had been stolen and *Page 3 
recovered. An empty beer can, a bottle of beer and a bike were found in the truck. Willis testified that none of the items belonged to her.
 {¶ 5} At trial, Mike Snyder testified that, on June 17, 2007, he was living at 56 Fifth Street in Massillon with his mother and a friend. Snyder testified that appellant, who he knew through his mother, was at Snyder's home on the evening of June 17, 2007, and that he saw appellant get out of the driver's side of a Dodge truck and walk up to Snyder's house. Snyder testified that he had never seen the truck before and that he had never seen appellant driving any vehicle before. When asked how appellant usually got to Snyder's house, Snyder testified that appellant usually rode a bike and that appellant's bike was in the back of the truck on the day in question.
 {¶ 6} According to Snyder, appellant began arguing with Snyder's mother who told appellant to leave and began pushing him out of the house. Appellant, according to Snyder, refused to leave.
 {¶ 7} On cross-examination, Snyder testified that he did not see appellant drive up in the truck.
 {¶ 8} Officer Thomas Rogers of the Massillon Police Department testified that, on June 17, 2007, at approximately 10:26 p.m., he was called to a disturbance at 56 Fifth Street, Southeast in Massillon. When asked what he saw when he arrived, the officer testified that appellant, who was "pretty intoxicated" and was slurring his words, was out near the sidewalk area. Trial Transcript at 106. Officer Rogers testified that he and the other officers on the scene were trying to figure out what to do with appellant because "[t]hey [Snyder and his mother] didn't want him there." Trial Transcript at 106. According to Officer Rogers, when he asked appellant how he arrived at the Fifth Street *Page 4 
address, appellant told him that he had gotten a ride in the pick-up truck that was sitting there. The officer testified that he thought that appellant told him that he had gotten a ride because he did not want to be questioned about driving while intoxicated.
 {¶ 9} Officer William Peel, who was also at the scene, testified that he spoke with appellant who appeared to be intoxicated but "wasn't stumbling, he wasn't incoherent." Trial Transcript at 126. The officer testified that appellant was able to understand his questions and that appellant told him that he had ridden his bike to the Fifth Street address and also said that the had been dropped off there by a friend. Testimony was adduced that Officer Peel noticed a strong odor of paint. When Officer Peel looked into the back of the truck, he saw a gallon size paint can and some spray cans. Officers Peel and Rogers then noticed that the whole truck had been freshly painted gold or bronze with a paintbrush.
 {¶ 10} After the officers determined that the truck had been stolen from Leah Willis, appellant was transported to the Massillon Police Department where the officers noticed that appellant had paint on his hands and shoes. The color of the paint matched the color of the paint on the truck
 {¶ 11} At trial, Officer Brian Muntean of the Massillon Police Department testified that he was at the police station at approximately 10:26 p.m. on June 17, 2007, and that he interviewed appellant. The officer testified that he read appellant his Miranda warnings and that appellant initialed the warning indicating that he understood them. The following is an excerpt from Muntean's testimony at trial:
 {¶ 12} "Q. I'm going to place this up here. Can you tell us about your interview of him? You said you had this Q and A. Can you just kind of tell us about that? *Page 5 
 {¶ 13} "A. Ah, sure. Ah, again, after I Mirandized him and so forth, asked him if he wanted to give his side of the story, because he kept saying in the jail this was `bullshit.' So I said, Okay; let's hear your side of the story then.
 {¶ 14} "First question, if they can see, it says, how did you get that truck, and his written reply was, the truck just end up at the — and, of course, I can't see the end of it there. Ah — maybe zoom in just a — zoom in a little bit.
 {¶ 15} "Can you move it to the left just a little bit, so I can — how did you get that truck, was my question and his answer in writing was, the truck just end up at the — I believe that says, spot I was at.
 {¶ 16} "Um, next question, who painted it? He says, they asked me to cover it up.
 {¶ 17} "Next questions — of course, I want to verify — cover it with paint?
 {¶ 18} "And he says, ah, I did not think at first.
 {¶ 19} "Go to the next questions, don't you find that suspicious? In other words, don't you find that suspicious some guy bring a truck to you and ask them to paint it and want to pay you to paint it with a paint brush and gold paint.
 {¶ 20} "And he says, yes and no. I just did it for the money.
 {¶ 21} "And that was the end of the Q and A Session." Trial Transcript at 154-155.[1]
 {¶ 22} At the conclusion of the evidence and the end of deliberations, the jury, on October 1, 2007, found appellant guilty of receiving stolen property. The jury further found that the property involved was a motor vehicle. Pursuant to an Entry filed on October 4, 2007, appellant was sentenced to fourteen (14) months in prison. *Page 6 
 {¶ 23} Appellant now raises the following assignments of error on appeal:
 {¶ 24} "I. THE TRIAL COURT ERRED BY DENYING THE APPELLANT'S MOTION TO SUPPRESS HIS STATEMENTS.
 {¶ 25} "II. THE TRIAL COURT ERRED BY IMPROPERLY ADMITTING HEARSAY TESTIMONY.
 {¶ 26} "III. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 27} "IV. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I {¶ 28} Appellant, in his first assignment of error, argues that the trial court erred in denying his Motion to Suppress. We disagree.
 {¶ 29} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the *Page 7 
law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; and Guysinger, supra.
 {¶ 30} As is stated above, appellant, on September 21, 2007, filed a Motion to Suppress, seeking to suppress oral and written statements that he made to the police in the basis that he did not knowingly, intelligently and voluntarily waive his Miranda rights.
 {¶ 31} However, under the holding in Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, warnings apprising a criminal defendant of his constitutional rights do not have to be given unless there is a custodial interrogation. State v. Wiles (1991), 59 Ohio St.3d 71, 83,571 N.E.2d 97, 114. "[T]he special procedural safeguards outlined inMiranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. `Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis (1980), 446 U.S. 291, 300,100 S.Ct. 1682, 1689, 64 L.Ed.2d 297.
 {¶ 32} "Interrogation" is defined to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. Id. at 301. *Page 8 
 {¶ 33} Appellant in his motion, sought to suppress statements that he made to police while at the Fifth Street address and also statements that he made to police while at the police station. Appellant, in his motion, alleged that he was highly intoxicated at the time he made the statements and that, as a result, his mentality was "severely impaired." Appellant argued that, therefore, he did not knowingly, intelligently and voluntarily waive his Constitutional rights.
 {¶ 34} Appellant initially argues that the trial court erred in failing to suppress statements that appellant made to the police at the Fifth Street address in Massillon. At the September 26, 2007, suppression hearing in this case, Officer Peel testified that he spoke with appellant at the Fifth Street address and asked appellant how he got there. According to the officer, appellant said that a friend had dropped him off and also said that he had ridden his bike. Officer Peel testified that he could tell that appellant had been drinking and he thought that appellant "was trying to separate himself from the truck so we didn't try and charge him with an OVI charge." Transcript of Suppression Hearing at 7. When asked why he believed appellant had been drinking, the officer testified that appellant smelled of alcohol and had glazed eyes, but that appellant appeared to understand the questions posed to him and gave appropriate responses to the same. Officer Peel testified that he did not give Miranda rights to appellant at any time during his contact with appellant because his only concern at the time was to get appellant away from the property. He further testified that while talking with appellant, he was not looking to arrest him for anything and that appellant had not been handcuffed or physically restrained in any way at the time. The officer testified that *Page 9 
appellant was not placed into a cruiser until after the police later discovered evidence linking appellant to the truck.
 {¶ 35} According to Officer Peel, appellant's level of intoxication, "rose to prohibitive amounts for driving, but not incapacitating, not stumbling, not falling down, not incoherent." Transcript of Suppression Hearing at 11.
 {¶ 36} On cross-examination, Officer Peel testified that appellant's statements to him about how he arrived at the location sounded inconsistent and that, in his experience, individuals who are intoxicated make inconsistent statements. He further testified that he never told appellant that he was free to leave.
 {¶ 37} We concur with trial court that appellant was not "in custody" when being questioned by Officer Peel. As is stated above, Officer Peel testified that he was on the scene in response to a call about a disturbance and that he was concerned about getting appellant away from the scene of the disturbance, not with arresting him. As noted by the trial court, Officer Peel was not investigating anything relative to the charge of receiving stolen property or any other crimes. The testimony adduced at the suppression hearing established that appellant was not handcuffed or restrained in any manner and that Officer Peel did not place appellant into the police cruiser. We find, therefore, that the trial court did not err in declining to suppress appellant's statements made while at the Fifth Street address.
 {¶ 38} Appellant also contends that the trial court erred in failing to suppress appellant's written statements to Officer Muntean. Appellant argues that, because of his intoxication, his written waiver of hisMiranda rights was not knowing, intelligent and voluntary. Appellant notes that, at the suppression hearing, he testified that he had *Page 10 
consumed sixteen twelve ounce beers and one twenty-four ounce beer on June 17, 2007.
 {¶ 39} A trial court, in determining whether a pretrial statement is involuntary, "should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976), 49 Ohio St.2d 31,358 N.E.2d 1051, paragraph two of the syllabus, overruled on other groundsState v. Edwards (1978), 438 U.S. 911, 98 S.Ct. 3147. The same considerations apply to whether a defendant understood and voluntarily waived his or her Miranda rights. See State v. Green, 90 Ohio St.3d 352,366, 2000-Ohio-182, 738 N.E.2d 1208. As was held in State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, "the weight of the evidence and credibility of witnesses are primarily for the trier of the facts. * * * This principle is applicable to suppression hearings as well as trials."
 {¶ 40} "The presence of [intoxicants] will not, by itself, make a statement per se inadmissible." State v. Stewart (1991),75 Ohio App.3d 141, 147, 598 N.E.2d 1275, quoting State v. Daniel (Dec. 31, 1990), Trumbull App. No. 89-T-4214, 1990 WL 237188 at 26. In practice, this means that "`* * * the presence of drugs or alcohol should be considered, [but] the amount must sufficiently impair the confessor's abilities to reason.'" Id at 147.
 {¶ 41} At the suppression hearing, Officer Muntean testified that he questioned appellant at the jail and that, after appellant agreed to give a statement regarding the incident, he read appellant his Miranda rights and appellant initialed a paper indicating *Page 11 
that he understood them. Officer Muntean testified that he then asked appellant specific questions and asked him to write down his answers to the questions. According to Officer Muntean, appellant, in his answers, indicated that the truck just ended up at the spot where it did and that, when asked who painted the truck, appellant stated that "they asked me to cover it up [with paint]." Transcript of Suppression Hearing at 21. Officer Muntean further testified that appellant said that he did it for money.
 {¶ 42} At the suppression hearing, Officer Muntean was questioned about appellant's intoxication. He testified that appellant was coherent and understood what he was being asked and that appellant was not falling over or losing control of bodily functions.
 {¶ 43} Appellant testified at the suppression hearing that he was intoxicated when he went to the residence in Massillon and that when questioned there by the police, he was unaware that he could leave without answering questions. Appellant testified that if he had known, he would have left. He further testified that he did not remember being read his Miranda rights or initialing the form containing the same. He further testified that he did not recall being asked how much school he had completed and was not asked whether he was able to read or write or understand English.
 {¶ 44} We concur with the trial court that while there was evidence that appellant was under the influence, there was no evidence that appellant was so intoxicated that he was unable to understand what was going on. Officer Muntean testified that appellant was coherent and was not slurring his speech, falling over or losing control of bodily functions. There was no evidence that appellant's ability to reason was so impaired as to render his waiver of his Miranda warning involuntary. We find, therefore, *Page 12 
that the trial court did not err in failing to suppress appellant's statements to Officer Muntean.
 {¶ 45} Appellant's first assignment of error is, therefore, overruled.
 II, III {¶ 46} Appellant, in his second assignment of error, argues that the trial court erred in improperly admitting hearsay testimony. In his third assignment of error, appellant argues that his trial counsel was ineffective in failing to object to the hearsay testimony.
 {¶ 47} At the trial in this matter, Officer Peel testified on direct examination as follows:
 {¶ 48} "A. And he [appellant] made statements that, ah, he was just up there visiting, ah, he made the statement that he rode a bike. He made a statement that he was dropped off by a friend, ah, you know.
 {¶ 49} "It, he was kind of going around the fact, because — you know, after I initially spoke to him, I went up and spoke to the residents ofthe house and they said he had pulled up in a truck. And the truck was parked on Wellman right about where he was standing.
 {¶ 50} "So when I was talking to him, I'm trying to get to the point, look, they say you brought this truck up there, and he tried to distance himself in whether or not he pulled up in that truck.
 {¶ 51} "Q. Okay. So he stated that he rode the bike, but he also stated someone had driven him there in the truck?
 {¶ 52} "A. In the truck. *Page 13 
 {¶ 53} "Q. Okay.
 {¶ 54} "A. Yeah, he said he had been dropped off.
 {¶ 55} "Q. He had been dropped off?
 {¶ 56} "A. And he just would say, when questioned about the vehicle, he stated that he didn't know whose it was, had no idea, you know.
 {¶ 57} "And we were saying, look, the people said you drove up in it.
 {¶ 58} "He said, well, they are not telling the truth. I don't know whose truck it is." Trial Transcript at 126-127. (Emphasis added).
 {¶ 59} Appellant now contends that the above statements from individuals at the residence constituted hearsay and that the trial court erred in admitting the same.
 {¶ 60} Because appellant failed to object at trial to the admission of the challenged testimony, we must review such alleged error under a plain error standard. State v. Hendershot (Jan. 16, 2001), Licking App. No. 99CA102, unreported, 2001 WL 46235. Criminal Rule 52(B) specifically provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus;State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191, 616 N.E.2d 909.
 {¶ 61} Applying the above standard, we find that even assuming, arguendo, that the admission of the challenged testimony was error, appellant has failed to meet his *Page 14 
burden of establishing that, but for the trial court's alleged error in admitting the challenged evidence, the outcome of the trial would have been different. In fact, we would find any error harmless beyond a reasonable doubt because there was overwhelming evidence of appellant's guilt. As is stated above, Willis testified that she never gave appellant permission to take her truck. Snyder testified that he saw appellant exit from the driver's side of the truck. Appellant's bike was found in the truck as were an empty beer can and a bottle of beer. Willis testified that none of the items were hers. It is undisputed that appellant had been drinking. The truck, which originally was black, had been freshly painted with a paint brush, and paint stains the same color as the truck were on appellant's hands and shoes. Appellant, in his statement to police, admitted to painting the truck, although he said that he did so for money. In short, we find no plain error based on the overwhelming evidence of guilt.
 {¶ 62} Appellant, in his third assignment of error, argues that his trial counsel was ineffective in failing to object to the above alleged hearsay testimony.
 {¶ 63} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and whether counsel violated any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial *Page 15 
is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. at 141-142. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie,81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267.
 {¶ 64} Assuming, arguendo, that counsel was ineffective in failing to object, we find that there is not a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. As is stated above, there was overwhelming evidence of appellant's guilt. We find, therefore, that appellant was not prejudiced by the alleged error.
 {¶ 65} Appellant's second and third fourth assignments of error are, therefore, overruled.
 IV {¶ 66} Appellant, in his fourth assignment of error, argues that his conviction for receiving stolen property was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 67} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, superseded by constitutional amendment on other grounds in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's *Page 16 
guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 68} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N .E.2d 541 superseded by constitutional amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N .E.2d 668, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 69} Appellant, in the case sub judice, was convicted of one count of receiving stolen property in violation of R.C. 2913.51(A). Such section states as follows: "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." *Page 17 
 {¶ 70} Appellant maintains that his conviction is against the sufficiency of the evidence because no one actually saw him driving the truck and there was no evidence or visible signs that the truck had been stolen, such as a broken window. Appellant also notes that he told the police that a male at the Fifth Street residence had paid him to paint the truck.
 {¶ 71} However, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that appellant received, retained or disposed of Leah Willis' truck knowing or having reasonable cause to believe that it had been obtained through the commission of a theft offense. Testimony was adduced at trial that appellant, who had been drinking, was seen exiting the driver's side of the truck which had been stolen from Leah Willis. The fact that appellant was not seen actually operating the truck is not relevant because appellant was not charged with stealing the truck or unauthorized use of the truck. Appellant's bike was found in back of the truck as were an empty beer can and a bottle of beer. Willis testified at trial that none of the items belonged to her. While Willis' truck, when she left it in her employee parking lot that day, was black, the truck had been painted gold or bronze. Appellant's hands and shoes were stained with the same gold or bronze color.
 {¶ 72} In addition, appellant, in his statement to police, stated that "they" asked him to cover the truck with paint using a paintbrush and gold paint. Appellant, in his statement, admitted that he found this suspicious, but testified that he did it for the money. As noted by appellee, "one asked to paint a vehicle with a paintbrush for some quick cash should logically have reasonable cause to believe the vehicle had been *Page 18 
obtained through the commission of a theft offense." We find, therefore, that appellant's conviction is not against the sufficiency of the evidence.
 {¶ 73} We further find that the jury did not lose its way so as to create a manifest miscarriage of justice in convicting appellant of receiving stolen property. Appellant's conviction, therefore, was not against the manifest weight of the evidence.
 {¶ 74} Appellant's fourth assignment of error is, therefore, overruled.
 {¶ 75} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
 Edwards, J. Hoffman, P.J. and Delaney, J. concur. *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Appellant's statement was admitted at trial as State's Exhibit 1. *Page 1